Affirmed by published opinion. Judge NIEMEYER wrote the majority opinion, in which Judge WILKINSON joined. Judge FLOYD wrote a dissenting opinion.
OPINION
NIEMEYER, Circuit Judge:
After Dr. Kenneth Fortier became medically disabled, he Closed his practice, Fortier Obstetrics & Gynecology, PLLC, and applied for disability benefits from Principal Life Insurance Company, which had issued short-term and long-term group disability policies to the practice. The policies provide that an insured who is disabled is entitled to receive 60% of his predisability earnings, capped at $1,500 per week for short-term benefits and $6,000 per month for long-term benefits. Those benefits, however, are reduced by the amount that all disability benefits (from both individual and group policies) exceed his predisability earnings. Principal Life determined that Fortier was disabled, as defined in the policies, but that, in view of the fact that he was receiving $15,470 per month in disability benefits on *233 his individual disability policies issued by another company, he was not entitled to any further benefits under Principal Life’s group disability policies.
Dr. Fortier commenced this action under ERISA, claiming that the administrator of the Principal Life policies had misconstrued the policies in calculating his predisability earnings at $9,916 and that, with a proper calculation, his predisability earnings were far greater, entitling him to the maximum benefits from Principal Life, despite the fact that he was receiving $15,470 on his individual disability policies. More particularly, he contends that Principal Life, when calculating his predisability earnings, erroneously deducted from his gross predisability earnings extraordinary and one-time business expenses incurred by him in 2003-04 in starting up his practice and in pursuing litigation with partners in his former medical practice. Without the reductions resulting from these extraordinary, one-time business expenses, Fortier’s predisability earnings were sufficiently large to entitle him to the maximum disability benefits from the group policies.
The district court, ruling on cross-motions for summary judgment, entered judgment in favor of Principal Life, concluding that the administrator’s interpretation was a reasonable one. The administrator, who was given “complete discretion” to interpret the policies, had concluded that because Fortier claimed his extraordinary expenses as deductions on his federal income tax returns, he thereby represented that they were “ordinary and necessary” business expenses. Thus, those same expenses were also, in the language of the policies, “usual and customary,” “incurred on a regular basis,” and “essential to the established business operation.” The district court held that the administrator, in adopting this interpretation, did not abuse her discretion.
We affirm. Even though we recognize that the policy language, defining those expenses that may be subtracted from gross income to arrive at predisability earnings, is somewhat confusing and, to be sure, needlessly verbose, we conclude that the administrator’s interpretation was a reasonable one.
I
Dr. Fortier formed a medical practice in 1994, which, by 2002, had grown to include four physicians and a nurse. As a result of a dispute with his co-owners, however, he left that practice and formed a new one, beginning it on October 1, 2002. In doing so, Fortier incurred substantial start-up expenses, as well as attorneys fees in prosecuting litigation with his former partners.
On his federal income tax return for 2003, Dr. Fortier reported gross income in the amount of $975,511 and business expenses in the amount of $910,168 (which included his start-up and litigation expenses), resulting in net income of $65,343. For 2004, he reported gross income of $997,647 and business expenses of $825,006 (again including start-up and litigation expenses), resulting in net income of $172,641.
In early 2005, Fortier became medically disabled, and on February 1, 2005, he closed his practice. He applied for short-term and long-term disability benefits from Principal Life under the group policies issued to his practice, which covered him and his employees. He also applied for disability benefits under two individual disability policies issued to him by Unum Life Insurance Company. Principal Life immediately began to provide Fortier with short-term disability benefits. Two months later, however, when Fortier be *234 gan receiving $15,470 in benefits from Unum, Principal Life ceased making any more payments under its group policies because Fortier’s predisability income was not sufficiently large to exceed the limits stated in the policies.
Dr. Fortier pursued administrative review as provided by the group policies, claiming that Principal Life had improperly calculated his predisability income because the administrator reduced his gross income by the “unusual and non-customary reorganizational business expenses.” If these “extraordinary” expenses were taken out of the calculus, Fortier’s income would have been, as he claimed, $48,913 per month. With this level of predisability income, he would have been entitled to the maximum benefits under the Principal Life policies of $1,500 per week for short-term benefits and $6,000 per month for long-term benefits, even while receiving $15,470 in benefits from Unum.
In a letter dated May 17, 2006, Principal Life denied Fortier’s claim for benefits, explaining:
The calculation of Dr. Fortier’s Predisability Earnings was based on the income and expenses included in his 2003 and 2004 Income Tax Returns. According to the Internal Revenue Service, to be deductible, a business expense must be both ordinary and necessary. An ordinary expense is one that is common and accepted in trade or business. A necessary expense is one that is helpful and appropriate for trade or business. An expense does not have to be indispensible to be considered necessary.
Based on the description above, by including the expenses noted on Dr. Fortier’s 2003 and 2004 Federal Income Tax Returns as deductible business expenses, he is representing that these expenses are both ordinary and necessary. We consider the expenses as usual and customary business expenses for the purpose of the determination of PreDisability Earnings for Long-Term Disability benefits offered under the group policy.
In your letter of January 6, 2006, you dispute Principal Life Insurance Company’s application of the meaning of “ordinary and necessary” as per the Internal Revenue Service’s definitions. Additionally, you requested [P]rincipal Life Insurance Company evaluate Dr. Fortier’s expenses without regard to whether or not they were deductible for tax purposes. Principal Life Insurance Company disagrees with your position. The policy text describing Weekly [and Monthly] Earnings[ ] is clear and refers to the deductibility for Federal Income Tax purposes. There is clear nexus in the policy between the policy definitions and Internal Revenue Service terminology. Moreover, the Internal Revenue Service definition of “ordinary and necessary” encompasses “usual, customary, and regular.”
Fortier commenced this action under ERISA, 29 U.S.C. § 1132(a)(1)(B), claiming short-term benefits of $1,500 per week and long-term benefits of $6,000 per month. He alleged that in calculating his predisability income for the purpose of determining benefits, Principal Life “failed to conduct a reasoned and principled review of [his] claim for disability benefits.”
On cross-motions for summary judgment, the district court entered judgment on March 30, 2010, in favor of Principal Life. The court applied the factors relevant to judicial review of an administrator’s exercise of discretion, as set forth in Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335 (4th Cir.2000), “weighted] them together,” and concluded that Principal Life did not abuse its discre *235 tion. From the district court’s judgment, Fortier filed this appeal.
II
On appeal, Dr. Fortier contends that the administrator abused her discretion in construing the group policies’ definition of “Predisability Earnings” to mean that Principal Life should simply use the amount of net income from his federal tax returns for the two years prior to his disability and thereby ignore other language included in the definition. This approach, he argues, allowed the administrator to deduct unusual and non-eustomary reorganization expenses and litigation expenses from his predisability gross earnings, resulting in the denial of benefits. Although Fortier was able to reduce his taxable income significantly by deducting on his 2003 and 2004 tax returns extraordinary, one-time expenses for the start-up of his medical practice and litigation expenses, he argues that those expenses should not, in calculating his predisability income, have been deducted as “business expenses” as that term is used in the group disability policies. He maintains that the unambiguous language of Principal Life’s policies includes specific criteria for the deduction of business expenses, which include not only the criterion that an expense be deductible for federal income tax purposes but also other explicitly stated criteria that the administrator did not take into account.
Had the administrator considered all relevant criteria, Fortier claims, she could not have concluded that his extraordinary, one-time start-up expenses and litigation expenses were, as required by the policies, “incurred on a regular basis” and “essential to the established business operation” of his medical practice. He argues that expenses “incurred on a regular basis” means that they must be incurred “frequently and repetitively” and that expenses “essential to an established business” exclude expenses for a start-up business. Thus, he concludes, not all tax deductible expenses must be included in the calculation of the policy-defined business expenses, as the administrator determined.
The parties agree that the administrator of the Principal Life disability policies is given discretion to construe the policies and to determine eligibility for benefits. The policies provide:
[Principal Life] has complete discretion to construe or interpret the provisions of this group insurance policy, to determine eligibility for benefits, and to determine the type and extent of benefits, if any, to be provided. The decisions of [Principal Life] in such matters shall be controlling, binding, and final as between [Principal Life] and persons covered by this Group Policy____
Thus, a court reviewing the administrator’s decision must review only for abuse of discretion and therefore “must not disturb the ... decision if it is reasonable, even if the court itself would have reached a different conclusion.” Haley v. Paul Revere Life Ins. Co., 77 F.3d 84, 89 (4th Cir.1996). Judicial review for abuse of discretion is guided by consideration of the eight nonexhaustive Booth factors:
(1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary’s interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external stan *236 dard relevant to the exercise of discretion; and (8) the fiduciary’s motives and any conflict of interest it may have.
Booth, 201 F.3d at 342-43.
In reviewing the administrator’s decision in this case, the district court concluded that Booth factors (1) (the language of the plan); (2) (the purposes and goals of the plan); (3) (the adequacy of the materials considered to make the decision and the degree to which they support it); and (4) (whether the fiduciary’s interpretation was consistent with other provisions in the plan) “strongly evidence[d] the reasonableness of [the administrator’s] interpretation.” The court found further that Booth factor (8) (conflict of interest) did “not render [the administrator’s] decision unreasonable.” [1]
We review the district court’s decision de novo, employing the same standard that governed the district court’s review of the plan administrator's decision. Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 360 (4th Cir.2008).
III
The parties’ dispute centers on the group policies’ definition of “Predisability Earnings.” The administrator applied the policies’ definition to conclude that Fortier’s predisability earnings were $9,916 per month, which was insufficient to entitle him to benefits in light of the $15,470 per month he was receiving from Unum.[2] For-tier, applying the same definition, argues that his predisability earnings were $48,913, which, the parties acknowledge, would afford him maximum benefits under Principal Life’s group disability policies.
Principal Life’s group disability policies provide for a disability benefit, not exceeding $1,500 per week on the short-term policy and $6,000 per month on the long-term policy, based on 60% of the member’s “Predisability Earnings.” “Pre-disability Earnings” are those earnings “in effect prior to the date Disability begins.” The policies define those earnings for purposes of the issues here as follows:
*237 Monthly Earnings on any date are based on an average of the following earnings as reported for Federal Income Tax purposes for the last two calendar year(s), assuming the owner meets all eligibility requirements:
a. the Member’s share (based on ownership or contractual agreement) of the gross revenue or income earned by the Policyholder, including income earned by the Member and others under the Member’s supervision or direction; less
b. the Member’s share (based on ownership or contractual agreement) of the usual and customary unreimbursed business expenses of the Policyholder which are incurred on a regular basis, are essential to the established business operation of the Policyholder, are deductible for Federal Income Tax purposes, and do not exceed the expenses before Disability began.
This language, for purposes of our discussion, provides essentially that Fortier’s predisability monthly earnings are determined by subtracting from his gross earnings as reported for federal income tax purposes his business expenses as defined in subsection (b) of the policies’ definition of predisability earnings. The business expenses are there defined in part as (1) “the usual and customary unreimbursed business expenses,” (2) “which are incurred on a regular basis,” (3) “are essential to the established operation of the Policyholder,” and (4) “are deductible for Federal Income Tax purposes.” The additional criterion that the expense not “exceed the expenses before Disability began” is inapplicable to this discussion, as we explain in Part IV, below.
In calculating Fortier’s predisability earnings, the administrator used predisability business expenses that Fortier deducted on his federal income tax returns for the tax years 2003 and 2004. She concluded that all the attributes described in the policies’ definition of predisability business expenses, even though stated distinctly, are in substance no more than relevant restatements of the attributes that make the expenses deductible for tax purposes. Therefore, she used the business expenses claimed by Fortier on his tax returns in her calculations. The attributes given in the policy to predisability business expenses — that they be “usual and customary,” “incurred on a regular basis,” and “essential to the established business operation” — merely expressed, as the administrator concluded, “attributes of expenses that have traditionally been considered in determining deductibility under [I.R.C. § 162(a) ].” Section 162(a) allows taxpayers to deduct “all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.” The administrator thus noted that there is a “clear nexus” between the “ordinary and necessary” language contained in I.R.C. § 162(a) and the various phrases contained in subsection (b) of the policies’ definition of monthly earnings.
Fortier argues reasonably that because business expenses for purposes of the policies’ calculations must meet both the criterion of being deductible under the Internal Revenue Code and the other criteria stated separately in subsection (b), the other separately stated criteria must be further limitations, distinguishing expenses deductible for tax purposes from business expenses defined in the policies for determining monthly earnings.
It is not clear why the policies chose to add the first three criteria — “usual and *238 customary,” “incurred on a regular basis,” and “essential to the established business operation” — when the phrase “deductible for Federal Income Tax purposes” could arguably be the only one needed to accomplish the policies’ purposes under the administrator’s interpretation. The overall policy language, however, taken in context, would seem to permit the administrator reasonably to conclude that the policies’ definition of business expenses should be read in light of I.R.C. § 162(a). This conclusion is indicated by two significant references in the policies’ language to the Internal Revenue Code.
First, “Monthly Earnings” as used in the policies must be based on data reported by Fortier on his federal income tax returns. This overarching requirement in the policies would seem to be vital to any disability plan interested in using accurate data because a taxpayer’s incentives are to reduce his income by deducting all legitimate business expenses from gross income. Thus, by defining predisability expenses in terms of tax reported data, the policies can expect greater accuracy when determining predisability income. This prefatory restriction in the definition of “Predisability Earnings” accordingly supports the administrator’s conclusion that there is a “clear nexus” between the criteria for reporting income and expenses on tax returns and the criteria for defining income and expenses under the group policies.
The second reference to federal income tax criteria in the policies is provided in subsection (b), which includes, as part of the definition of business expenses, those expenses that are “deductible for Federal Income Tax purposes.” Neither party has conducted an analysis of the Internal Revenue Code to determine whether there are deductible business expenses that would not meet the other criteria set forth in subsection (b) of the policies. Principal Life nonetheless contends that the other criteria in subsection (b) are merely reiterations of the relevant criteria for federal tax deductibility, providing example restrictions or clarifications of what was intended in the policies.
This is not an irrational position. For example, the Internal Revenue Code provides that to be deductible, a business expense must be “ordinary and necessary.” The Supreme Court has construed “ordinary” to be synonymous with “normal, usual, or customary” — terms that the disability policies also use. See Deputy v. du Pont, 308 U.S. 488, 495, 60 S.Ct. 363, 84 L.Ed. 416 (1940); see also Danville Plywood Corp. v. United States, 899 F.2d 3, 6-7 (Fed.Cir.1990).
In the same vein, the administrator could conclude that the word “essential,” as contained in the policies, is a synonym of the tax term “necessary.” See Merriam-Webster’s Collegiate Dictionary 427 (11th ed.2007) (defining “essential” in relevant part, as “of the utmost importance: basic, indispensible, necessary”); Noland v. Comm’r, 269 F.2d 108, 111 (4th Cir.1959) (“[T]hat expense which is essential to the continuance of [an individual’s] employment is deductible”).
While Fortier does not take real issue with the comparison of “necessary” and “essential,” he does note that the policy requires that an expense be essential to “the established business operation of the Policyholder.” Because the expenses incurred by him in 2003 and 2004 were in large part start-up expenses for his new medical practice, he argues that the term “established” restricts the expenses that may be used in determining predisability earnings. While this argument is not at all unreasonable, it was nonetheless also reasonable for the administrator to have concluded that the entire phrase reiterates *239 the requirement of I.R.C. § 162(a) that business expenses be “necessary ... in carrying on any trade or business” and that the word “established” merely functions to underscore that “not every income-producing and profit-making endeav- or constitutes a trade or business.... [T]o be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity.” Comm’r v. Groetzinger, 480 U.S. 28, 35, 107 S.Ct. 980, 94 L.Ed.2d 25 (1987).
Finally, the policies’ requirement that expenses be “incurred on a regular basis” can be construed to restate the requirements of I.R.C. § 162(a) inasmuch as the term “regular,” even though having several possible meanings, does include the meaning “ordinary.” While the phrase “on a regular basis” might, at first blush, be thought to mean “at regular intervals and repeatedly,” as Fortier claims, it can also mean “regularly incurred,” which more readily could be taken to mean “ordinarily incurred.” See Gamer’s Dictionary of Legal Usage 104 (3d ed.2011) (noting that “updated on a regular basis” is grammatically identical to “regularly updated”); see also The Random House Dictionary of the English Language 1624 (2d ed.1987) (defining “regular” and “regularly” to include both “at regular times or intervals” or simply “usually” or “ordinarily”). It is significant to observe that were Fortier’s interpretation of “on a regular basis” to be adopted by the administrator, it could become virtually impossible to distinguish includable and excludable expenses. For instance, if Fortier were to use a light bulb in his business that had a ten-year life, would the expense for that light bulb be “incurred on a regular basis” as he uses the term, i.e. “repeatedly”? Or if Fortier purchased a permanent piece of equipment that he was amortizing over the period of, say, seven years, would the one-time purchase be excludable as not “incurred on a regular basis,” even though he claimed a deduction for a portion of the equipment’s cost each year?
Even though the administrator’s interpretation probably renders much of subsection (b)’s definition of business expenses repetitive and superfluous, it is nonetheless, if not the best, at least a reasonable solution to an interpretive dilemma. For example, it is unavoidable to conclude that the phrase “usual and customary” does not have a distinct meaning from I.R.C. § 162(a)’s “ordinary and necessary,” or that “essential” does not have a distinct meaning from “necessary.” And if that is true, then the other phrases, while not tied as closely to the Internal Revenue Code, would have to be subjected to some test to determine whether they are to be given independent meaning while “usual and customary” and “essential” would not be given an independent meaning. With the various phrases thus being subject to amorphous tests to resolve their multiple meanings, we cannot conclude that Principal Life’s take on the policy was an unreasonable one.
Because the policy entrusts Principal Life with “complete discretion” to resolve ambiguities and to determine benefits, we will respect its reasonable interpretation of the language when calculating Fortier’s predisability earnings.
IV
Dr. Fortier contends additionally that Principal Life’s interpretation is erroneous based on the last clause in subsection (b) of the policies’ definition of business expenses, which provides that business expenses deducted from predisability income must “not exceed the expenses before Disability began.”
This argument, however, provides Fortier with no assistance because it is readily *240 apparent that both the meaning and context of the clause make it inapplicable to the circumstances of this case. First, it makes no sense to ask whether predisability expenses “exceed the expenses before Disability began.” Such a statement is meaningless and contributes nothing to the discussion. Read in context, it is apparent that the clause is a part of the definition of “Monthly Earnings” used for other purposes in the policies. The “Monthly Earnings” definition is textually applied to define both “Current Earnings” and “Predisability Earnings.” But “Current Earnings” are relevant only to the determination of benefits for a member who is “working during a period of Disability,” which is not Fortier’s circumstance. In such a case the member’s monthly earnings are determined by looking at his gross revenue and deducting those expenses that satisfy the other criteria of business expenses as well as the criterion that those expenses, while the member is working, “do not exceed the expenses before Disability began.” Thus, the limitation imposed by the last clause of subsection (b) obviously applies only when determining “Current Earnings,” an issue not relevant to the case before us.
Because we conclude that Principal Life’s denial of Dr. Fortier’s claims for short-term and long-term disability benefits was based on a reasonable reading of Principal Life’s disability policies, we affirm the judgment of the district court.

AFFIRMED.

. The parties agree that because Principal Life served in the dual role of both evaluating claims and paying claims, it operated under a conflict of interest. But neither party pointed to any evidence of how the conflict of interest affected the interpretation made by the administrator in this case. Moreover, neither party undertook the analysis that the Supreme Court required in Metropolitan Life Insurance Co. v. Glenn, 554 U.S. 105, 108, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008), inquiring whether the conflict was significant given “the circumstances of the particular case.” Absent any evidence in the record that Principal Life’s denial of benefits was a product of its financial interest, rather than its genuine and reasoned judgment, we can hardly place determinative weight on that factor in reviewing the administrator's decision.

. The administrator’s calculation began with gross income and business expenses that For-tier reported on his 2003 and 2004 tax returns, which, when averaged, came to $9,916 per month. She took 60% of that number to arrive at the monthly benefit of $5,949.60. Then, applying the limitation relevant to when the insured receives “payments attributable to individual disability policies,” such as the $15,470 Fortier was receiving from Unum, she concluded Fortier was entitled to no benefits. The limitation provides that "[i]n no event will the sum of amounts payable” for (1) group benefits under the Principal Life policies ($5,949.60) and (2) “payments attributable to individual disability insurance policies” ($15,470) "exceed 100% of Predisability Earnings” ($9,916). "In the event the Member’s total income from all sources listed above exceeds 100% of Predisability Earnings, the benefits under this Group Policy will be reduced by the amount in excess of 100% of Predisability Earnings.” Since Fortier’s income from all sources ($21,419.60) would exceed his predisability earnings ($9,916) by $11,503.60, the benefits under the Principal Life policies are reduced by that amount, leaving him entitled to zero benefits.