**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 27, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

SS WHITE BURS, INC.,

    Plaintiff - Appellant,

v.

GUIDANCE ENDODONTICS, LLC,

    Defendant - Appellee.

No. 19-2049
(D.C. No. 1:18-CV-00698-WJ-KBM)
(D. N.M.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **PHILLIPS**, **McHUGH**, and **EID**, Circuit Judges.
_____

SS White Burs, Inc. ("SS White") and Guidance Endodontics ("Guidance") are

embroiled in a licensing dispute over "V-Taper," a patented endodontic file used in

root canal procedures. The district court denied SS White's motion for injunctive

relief and granted Guidance's cross-motion to compel arbitration, applying an

arbitration clause within the parties' License Agreement. It also denied SS White's

motion to reconsider.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

On appeal, SS White contends arbitration is not appropriate because the License Agreement was superseded by a handwritten "Settlement Agreement" that makes no mention of arbitration. At the same time, SS White faults the district court for assessing the validity and enforceability of that subsequent agreement. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    Background

SS White is a longtime manufacturer of dental products, including endodontic files used for root canals. SS White hoped to develop minimally invasive root canal products, so it pursued a license for V-Taper from Guidance, the patent holder. Tom Gallop is the Chief Executive Officer (CEO) and co-owner of SS White. Dr. Charles Goodis, an inventor and endodontist, is the founder, CEO, and sole member of Guidance, as well as the founder and CEO of Edge Endo, LLC.

In March 2015, SS White and Guidance executed a License Agreement, by which Guidance granted SS White a non-exclusive license to intellectual property, including the V-Taper patents. In exchange, SS White agreed to pay royalties to Guidance according to a designated schedule. Relevant to this appeal, the License Agreement contains an arbitration provision, which states that "[a]ny disputes by and between the parties arising under this Agreement, other than [certain claims for injunctive relief], shall be resolved by arbitration." Aplt. App. at 26. The License Agreement also contains a modification provision, which specifies that it "may be modified only by a written instrument that specifically refers to this Agreement and is signed by an authorized official of each Party." *Id.* at 28.

2

In January 2016, the parties executed a document entitled "2016 Amendment to License Agreement" ("2016 Amendment"), which extends by one year the deadlines for (1) SS White's royalty payments and (2) the termination of the License Agreement if SS White fails to meet its minimum sales requirements. *Id.* at 31-36. The parties made handwritten changes to a copy of certain sections of the License Agreement and attached the marked-up document as Exhibit A to the 2016 Amendment. Per the requirements of the License Agreement's modification provision, the 2016 Amendment specifically references "the March 26, 2015 License Agreement," *id.* at 31, and is signed by an authorized official of each party. The final paragraph of the 2016 Amendment states that "[a]ll other terms and conditions of the License shall remain unchanged" and incorporates "all the rights and obligations contained in the License [Agreement]." *Id.* at 31.

Ultimately, the relationship between the parties soured, and SS White stopped making royalty payments. After some back and forth without a mutually satisfactory resolution, Gallop and Goodis met during an endodontist conference in Denver in April 2018. There they signed a handwritten document containing the following text:

> SS White pays Accrued royalties per Agreement
>                 +
> $175k/yr  Next 5 years
> 2018, 2019, 2020, 2021 & 2022
>
> In Exchange for this
> Edge Endo grants SSW Ownership
> Of all V Taper Patents
>
> [Signature]
> Chuck Goodis CEO

3

[Signature]
Tom Gallop SSW CEO

*Id.* at 38.

The parties present very different versions of this document's origin and significance. SS White states that it was a product of negotiations between Goodis and Gallop and repeatedly calls it a "Settlement Agreement." *See* Aplt. Opening Br. *passim.* According to SS White, the document reduced to writing Goodis's offer to sell Guidance's ownership of the V-Taper patents outright to SS White[1] if SS White paid the accrued royalties for 2016 and 2017 and made yearly payments of $175,000 from 2018 through 2022. Guidance, by contrast, characterizes the document as a "proposal" stemming from a "very brief and rushed" conversation between the companies' leaders, for which "key terms and details would need to be negotiated before any contract was formed." Aplt. App. at 93-94. We refer to this document as the "2018 Handwritten Document."

On May 11, 2018, SS White sent Guidance a draft document entitled, "Second Amendment to License Agreement" ("Second Amendment"), prefaced with a cover e-mail from Gallop asking, "How does this work?" *Id.* at 122-36. The Second Amendment references the License Agreement and the 2016 Amendment by title and date. It contains three amendments to the License Agreement, which relate to

---

[1] The document actually states that "*Edge Endo* grants SSW Ownership," Aplt. App. at 38 (emphasis added). In one allegation of the complaint, SS White states that "Guidance is an alter-ego of Edge Endo" and that "Goodis . . . uses these entities interchangeably." *Id.* at 8. But elsewhere in the complaint, SS White calls the reference to Edge Endo a "drafting error." *Id.* at 13.

4

royalties and the assignment of patents and trademarks. First, by May 2018, SS White must pay $236,360.89 in royalties accrued before December 31, 2017, and "upon such payment being made no royalties shall be due by [SS White] for any period thereafter." *Id.* at 123. Second, by the effective date of the Second Amendment, Guidance and Goodis must transfer and assign their rights to the V-Taper patents and trademarks to SS White through an Assignment Agreement and Trademark Assignment Agreement, for which drafts were attached. Third, in consideration for the assignments, SS White must make yearly payments of $175,000 to Guidance from 2018 through 2022. The draft Second Amendment confirms that "[a]ll other terms and conditions of the [License] Agreement shall remain in full force and effect," *id.* at 124, thereby leaving the arbitration provision in place. In an e-mail dated May 24, 2018, Gallop urged Goodis to "memorialize" their agreement because "[a]mbiguity can lead to disputes." *Id.* at 137. The parties never executed the Second Amendment.

In July 2018, SS White filed a complaint in district court, asserting a breach of contract claim and seeking injunctive relief and specific performance based on an anticipatory breach of the 2018 Handwritten Document. Shortly thereafter, Guidance filed a demand for arbitration with the American Arbitration Association, alleging that SS White breached the License Agreement and the 2016 Amendment. SS White then filed a motion for a preliminary injunction in district court. Guidance opposed that motion and filed a cross-motion to compel arbitration and dismiss the lawsuit. The district court denied SS White's motion and granted Guidance's cross-motion. It

5

held that the 2018 Handwritten Document did not supersede the License Agreement and the 2016 Amendment because it is not a valid and binding contract, so the arbitration provision from the License Agreement is still enforceable.

SS White next filed a motion to alter or amend the judgment under Federal Rules of Civil Procedure 59(e) and 60, asking the district court to reconsider its ruling that the 2018 Handwritten Document was not a valid contract, to allow the parties to pursue discovery as to whether the parties intended to be bound by that document, and to permit a jury to resolve whether that document is a valid contract. SS White also challenged the district court's finding that there were no material facts in dispute. The district court denied the motion to reconsider as well, echoing its original ruling.

SS White filed this timely appeal.

## II.    Standard of Review

Our review is governed by two separate standards. We review the district court's denial of SS White's motion for a preliminary injunction and motion to reconsider for an abuse of discretion. *See Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1252 (10th Cir. 2016) (motion for a preliminary injunction); *Jennings v. Rivers*, 394 F.3d 850, 854 (10th Cir. 2005) (post-judgment motion).

We review de novo the district court's grant of Guidance's motion to compel arbitration. *See Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012). In reviewing whether arbitration is required, we apply the same legal standard the district court employed, *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d

6

1279, 1283 (10th Cir. 1997), which resembles the summary judgment standard, *see Hancock*, 701 F.3d at 1261. If "the parties dispute the existence of an agreement to arbitrate, a court may grant a motion to compel arbitration if there are no genuine issues of material fact regarding the parties' agreement." *Id.* (internal quotation marks omitted). The opposing party receives "the benefit of all reasonable doubts and inferences that may arise." *Id*. (internal quotation marks omitted).

### III. Analysis

Applying these standards, we affirm for substantially the same reasons provided by the district court in its (1) Memorandum Opinion and Order Denying Plaintiff's Motion for Preliminary Injunction and Granting Defendant's Cross-Motion to Compel Arbitration and Dismiss Case, dated February 27, 2019, *see* Aplt. App. at 191-206; and (2) Memorandum Opinion and Order Denying Motion to Alter or Amend Judgment, dated March 19, 2019, *see id.* at 259-63.

The district court thoroughly traced the history of the parties' relationship and carefully considered the contents of the License Agreement, the 2016 Amendment, the 2018 Handwritten Document, the parties' correspondence, and the Second Amendment. After parsing through the evidence submitted by the parties, the court found that the 2018 Handwritten Document "is not a valid and binding contract" because it "was never meant to constitute a complete and exclusive document fully expressing the intent of the parties." *Id.* at 202. Therefore, "the arbitration provision from the License Agreement is still intact, valid and enforceable." *Id*. The district court also noted that SS White's incorporation of an arbitration provision into written

7

agreements that preceded the 2018 Handwritten Document and the draft agreement that succeeded it "belies its claim that it is being 'forced' to arbitrate" this dispute. *Id.* at 203. We have nothing to add to the district court's thoughtful analysis as to why arbitration is required, and we discern no abuse of discretion with regard to its denial of SS White's motion for a preliminary injunction or its motion to reconsider.

We are also not persuaded by SS White's arguments on appeal. The crux of its argument here is that even if the underlying matter is arbitrable (which it continues to dispute), the district court erred in going beyond the threshold question of arbitrability when it found the 2018 Handwritten Document to be invalid and thus reached the merits of its breach of contract claim. As explained below, however, a ruling on the validity of the 2018 Handwritten Document was central to the district court's resolution of the parties' competing motions given the arguments presented. In fact, SS White affirmatively sought such a ruling by repeatedly arguing in the district court that the dispute was not arbitrable because the 2018 Handwritten Document was (1) a valid, enforceable agreement that (2) superseded the License Agreement and the 2016 Amendment in their entirety. The two concepts went hand in hand. SS White also moved for an injunction on these grounds.

In its complaint, for instance, SS White defined the License Agreement and the 2016 Agreement as "the 'Superseded Agreement'" and alleged that "[t]he Settlement Agreement superseded [them] in their entirety as the parties intended." Aplt. App. at 7, 11. Then, in its motion for a preliminary injunction, SS White argued that it was substantially likely to succeed on its claim for injunctive relief because "the

8

Settlement Agreement and facts attendant thereto evince all of the essential elements of a valid and enforceable contract" and "[t]he Settlement Agreement supersedes the Prior Agreements." *Id*. at 51-52; *see also id.* at 51 (stating that "the Settlement Agreement is a valid, binding contract"); *id.* at 148 ("SS White will likely succeed on the merits because it has established that the Settlement Agreement both: (1) is a valid and enforcement [sic] contract; and (2) supersedes the Prior Agreements."). Similarly, in opposing arbitration, SS White argued that "[t]he contract under which [its] claims arise—the Settlement Agreement—is a valid and enforceable contract that *does not* contain an arbitration provision." *Id.* at 145; *see also id.* at 50-51 and 148-53 (detailing SS White's argument that the 2018 Handwritten Document is a valid and enforceable contract). It also argued that the arbitration provision in the License Agreement and the 2016 Amendment did not survive because those agreements "were superseded *in their entirety* . . . as a matter of law" by the alleged 2018 contract. *Id*. at 145.[2]

Having unequivocally asked the district court to rule that the 2018 Handwritten Document was a binding and enforceable contract that superseded the parties' earlier agreements as a matter of law, SS White cannot now complain about the district court addressing this very issue. Furthermore, the legal justification for its argument is misplaced. SS White relies on the proposition that district courts

---

[2] Notably, in making this argument, SS White did not reconcile the fact that the License Agreement expressly states that it "supersedes all prior agreements, negotiations, and understandings of the Parties," Aplt. App. at 28, whereas the 2018 Handwritten Document contains no such provision.

cannot consider challenges to the entirety of a contract containing an arbitration provision, such as challenges based on fraud in the inducement of a contract or illegality of a contract. Aplt. Opening Br. at 22. But we face a very different scenario, in which an entirely separate agreement that does not contain an arbitration provision is under scrutiny. The district court did not strike down an agreement containing an arbitration provision; it declared invalid an agreement that did *not* contain an arbitration provision, which was sandwiched between multiple agreements and a proposed agreement that did.

SS White also argues on appeal that the district court "improperly resolved material disputes of fact in Guidance's favor when it concluded that the parties' dispute must be resolved in arbitration." *Id.* at 4. We reject this argument too. In its briefing before the district court, SS White maintained that it had "presented undisputed facts—*i.e.*, the text of the Prior Agreements and Settlement Agreement," such that "the issues before the [district court were] susceptible to resolution as a matter of law." Aplt. App. at 163. Even so, in case the district court disagreed, SS White requested a summary trial and narrowly targeted discovery to resolve the issue of arbitrability. *Id.* The district court found the material facts to be undisputed and explained that it "needed to decide only the legal significance of the facts." *Id.* at 205. Consequently, it denied SS White's request for a summary trial and concomitant discovery.

SS White now tries to create a factual dispute by pointing to the Declarations that SS White's CEO prepared for this litigation, which "aver[] that, at the time of

10

execution, the parties intended for the Settlement Agreement to be binding and to supersede the License Agreement in its entirety." *Id.* But SS White is only entitled to receive the benefit of *reasonable* doubts and inferences under the applicable standard. *See Hancock*, 701 F.3d at 1261. Additionally, "[a]ffidavits must contain certain indicia of reliability. . . . We do not consider conclusory and self-serving affidavits." *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1201 (10th Cir. 2015) (internal quotation marks omitted). Notwithstanding Gallop's Declarations, it is clear from the record evidence, particularly the flurry of communications and proposed agreements that SS White sent to Guidance after the April 2018 meeting, that the 2018 Handwritten Document was a proposal and not a meeting of the minds. Significantly, as the district court emphasized when it found no material factual disputes exists, SS White did not initially acknowledge these important events,[3] let alone contest them:

> [W]hile Plaintiff never mentioned those subsequent proposals or the circumstances surrounding them, it did not dispute them, either. Strangely, the factual allegations in Plaintiff's amended complaint do not venture past the dates relevant to the 2018 Handwritten Document, and make no reference to subsequent events, and none of these proposals are included as exhibits to the complaint. . . . Similarly, in its motion to reconsider, Plaintiff simply pretends these subsequent events and proposals do not exist.

Aplt. App. at 262.

---

[3] Ultimately, SS White referred to the arguments based on events post-dating the 2018 Handwritten Document as "no more than a distraction." Aplt. App. at 153 (emphasis omitted).

11

Because no material factual disputes exist, it follows that the district court did not err in denying SS White's perfunctory request for a summary trial and narrowly targeted discovery to resolve the issue of arbitrability.

## IV.    Conclusion

Accordingly, we affirm the district court's decisions denying SS White's motion for a preliminary injunction, granting Guidance's motion to compel arbitration and to dismiss this lawsuit, and denying SS White's motion to alter or amend the judgment against it.

Entered for the Court


Allison H. Eid
Circuit Judge

12